**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**AIKEN DIVISION**

|  |  |
|---|---|
| | C/A NO: 1:26-CV- 2238-SAL |
| Deborah M. Hutto | |
| Plaintiff | **COMPLAINT** (Jury Trial Requested) |
| vs. | |
| Wyche Professional Association, Alice W. Parham Casey, Brian Critzer, and Stacey J. Bazzle | |
| Defendants | |

Debra M. Hutto ("Hutto" or "Plaintiff") files this Complaint against Wyche Professional Association ("Wyche"), Alice W. Parham Casey, Brian Critzer, and Stacey J. Bazzle (collectively "Defendants"). The Plaintiff respectfully shows the Court the following:

**JURISDICTION**

1.      The Plaintiff is a resident of Edgefield County, South Carolina.  Her address is 512 Stephens Mill Drive, North Augusta, SC 29860.

2.      The corporate Defendant is a law firm operating under the name Wyche Professional Association (a/k/a Wyche, P.A.), which collects consumer debt against South Carolina consumers like Plaintiff.

1

3.     Wyche is incorporated in South Carolina and has offices in both Greenville and Columbia, South Carolina. Wyche's registered agent is Gregory J. English, 200 East Broad Street, Suite 400, Greenville, South Carolina 29601.

4.     Defendant Alice W. Parham Casey ("Casey") is a licensed South Carolina attorney that collects consumer debt against South Carolina consumers like Plaintiff.  She is also an employee of Wyche that has been involved in the Hutto case.

5.     Defendant Brian Critzer ("Critzer") is a licensed South Carolina attorney that collects consumer debt against South Carolina consumers like Plaintiff.  He is also an employee of Wyche that has been involved in the Hutto case.

6.     Defendant Stacey J. Bazzle ("Bazzle") is a South Carolina paralegal that works for both Casey and Critzer and helps them collect consumer debt against South Carolina consumers like Plaintiff. She is also an employee of Wyche that has been involved in the Hutto case.

7.     Upon information and belief, the individual Defendants Casey, Critzer, and Bazzle, are South Carolina residents who both live and work in this state, and can be served at their work addresses at one of Wyche's two office locations in this state.

8.     Jurisdiction and venue is proper in Aiken County because the underlying loan that was being collected by Defendants was created at the Regional Finance office located at 404 E. Martintown Rd, Suite D, North Augusta, SC 29841. The Aiken Division is also where Plaintiff resides. Also, some of the allegedly improper collection conduct occurred during litigation in this court in the case of *Hutto vs. Regional Management Corp*, Civil Action Number 1:19-cv-03463-SAL ("Prior Suit").

2

9. The basis for federal court jurisdiction is a federal question under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

## FACTUAL ALLEGATIONS

10. The Plaintiff re-alleges and reasserts the information alleged in the preceding paragraphs as if repeated verbatim.

11. On December 12, 2019, Hutto filed the Complaint in the Prior Suit in this court against Regional Management Corp. d/b/a Regional Finance ("Regional") for alleged consumer protection violations, which was later assigned case number 1:19-cv-03463-SAL [ECF 1]. Regional subsequently filed a motion to dismiss and compel arbitration, which this court granted by order dated January 31, 2023 [ECF 51].

12. Pursuant to the order compelling arbitration, Regional and Hutto engaged in arbitration before the American Arbitration Association ("AAA"), which resulted in the Final Award that the arbitrator issued on May 6, 2025, a true and correct copy of which is attached to this Complaint as an exhibit. This document was also filed in the Prior Suit as part of ECF 55-2.

13. In the Final Award, the arbitrator awarded $1,000.00 to Hutto on her claim against Regional, $15,371.27 to Regional for its counterclaim against Hutto, for a net award of $14,371.27 to Regional. The arbitrator also awarded $25,804.94 to Hutto's counsel, Cantrell Legal PC, for attorney fees and costs.

14. During the Prior Suit, and in the subsequent arbitration proceeding, Regional was represented by Wyche, which matters were handled by its employees Casey, Critzer, and Bazzle.

15.     On June 6, 2025, the Defendants sent the attached letter via FedEx to the undersigned attorney, in his capacity as Hutto's counsel in the arbitration proceeding. This document was also filed in the Prior Suit by Defendants as ECF 55-1.

16.     The attached June 6, 2025 letter from Defendants was delivered by FedEx to Hutto's counsel on June 9, 2025.

17.     Enclosed with the June 6, 2025 letter from Defendants was a check dated June 6, 2025 from Regional to Cantrell Legal PC for $11,433.67.

18.     The June 6, 2025 letter stated that the check amount was determined by deducting the $14,371.27 award to Regional from the $25,804.94 award to Hutto's counsel.

19.     The June 6, 2025 letter also stated that the "check represents full satisfaction of the arbitrator's Final Award dated May 6, 2025" in the arbitration action.

20.     The arbitrator only netted the awards to Regional and Hutto against each other, but Defendants netted the awards to Regional and Hutto's counsel against each other.

21.     Defendants' actions in netting the awards between Regional and Hutto were intentional, and not the result of any mistake or typographical error by Defendants.

22.     There was no mutual debt between Regional and Hutto's counsel.

23.     Hutto's counsel did not consent to using a portion of the arbitrator's award to him for attorney fees and costs to pay off the amount of Hutto's debt that the arbitrator found was due from Hutto to Regional.

24.     The arbitrator's award shows no objective intent by the arbitrator to deduct the amount owed by Hutto to Regional from the amount awarded to Hutto's counsel.

25.     Hutto's counsel objected via email to Defendants' attempt to take the attorney fees awarded to him to payoff Regional's claim against Hutto.  Hutto's counsel also attempted

to mitigate his damages by asking Defendants in these emails to withdraw the "full satisfaction" language in the cover letter so that the payment could be applied as a partial payment towards the amounts owed by Regional, but Defendants failed to do that. See attached email exhibit also filed in Prior Suit as ECF 55-3.

26.    Defendants acknowledged in the attached emails (Prior Suit ECF 55-3, p. 3 of 8) that their actions in taking the attorney fee award to payoff Regional's claim against Hutto could create a conflict between Hutto and her counsel.

27.    On May 19, 2026, Defendants filed the attached Response to Petition to Confirm Arbitration Award in the Prior Suit [ECF 55]("Response").

28.    On page 2 of the Response, Defendants stated that Hutto's referenced Petition to Confirm Arbitration Award ("Petition")[Prior suit ECF 53] "fails to acknowledge that Regional previously tendered payment in full satisfaction of the arbitration award. Specifically, Regional carried out its obligations under the arbitration award by offsetting the attorney's fee award with the amount the arbitrator awarded Regional on its counterclaim because an attorney's fee award belongs to the party, not the lawyer. Jackson v. Speed, 326 S.C. 289, 307, 486 S.E.2d 750, 759 (1997) ("The award of attorney's fees is made to the party, not his lawyer.")."

29.    On page 2 of the attached Response [Prior Suit ECF 55], Defendants state regarding Hutto's arbitration claims against Regional that "Regional never intended to harass, embarrass, or annoy Petitioner; rather, Regional simply wanted to understand her plans for repayment and help if needed."  On page 3 of that Response, Defendants claim "Meanwhile, [Hutto] filed a complaint against Regional with the South Carolina Department of Consumer Affairs ("Department") for Regional's alleged conduct in

attempting to inquire about the status of Petitioner's delinquent loan payments. The Department investigated the complaint, found Regional's conduct to be compliant, and dismissed the matter."

30.     However, reference to the facts of the arbitration action shows that the arbitrator ruled in his attached Interim Award both that "Respondent Regional Finance communicated with client Hutto when Regional Finance knew that Hutto was represented by an attorney" ¶ 4 [Prior Suit ECF 55-2] and that "Respondent Regional Finance has violated the South Carolina Consumer Protection Code, Section 27-5-105(5)(b)(ii)." ¶ A [*Ibid.*].[1]

31.     S.C. Code § 37-5-108(5)(b)(ii), which the arbitrator found in the Interim Award that Regional had violated prohibits[2] a creditor from "(b) communicating with the consumer or a member of his family at frequent intervals during a twenty-four hour period or at unusual hours or under other circumstances so that it is a reasonable inference that the primary purpose of the communication was to harass the consumer. The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium. A creditor or debt collector may not: …(ii) communicate with a consumer who is represented by an attorney when such fact is known to the creditor or debt collector unless the attorney consents to direct communication or fails to respond within ten days to a communication;"

---

[1] The cite to § 27-5-105(5)(b)(ii) is clearly a typo since there is no such S.C. Code section.  The correct cite appears to be § 37-5-108(5)(b)(ii), which was referenced by Hutto in her SCDCA complaint letter dated March 28, 2017 and is attached as an excerpt from Regional's Exhibit R15 that was filed in the arbitration action.
[2] See *In re Zenner*, 348 S.C. 499, 507 560 S.E.2d 406 n.3 (2002).

32.     As can be seen from the attached excerpts of Regional's R15 exhibit that was filed in the arbitration action, the Department did not "dismiss" Hutto's complaint letter that was filed with them.  Instead, the Department referenced the attached investigative report dated April 12, 2017 that was conducted by the South Carolina State Board of Financial Institutions Consumer Finance Division ("BOFI") and then "assigned the complaint a closing designation."[3]  Closing is not dismissal, but upon receiving the closing letter a consumer may then file an action against the business for any alleged violations of § 37-5-108.

33.     Reference to the April 12, 2017 BOFI letter in the attached excerpts  from Regional's R15 exhibit will show that the BOFI investigator told Regional's branch manager "that if a creditor seeks to communicate with a consumer who is represented by an attorney when such fact is known to the creditor, a court or law may consider this type of activity as harassment. I advised [Regional's branch manager] to ensure in the future, all collection activity is handled in a professional manner. [The manager] was very cooperative as he agreed to my request. Regional Finance has agreed to no longer seek to communicate with Deborah Hutto."

34.     Regarding Defendants' claim in the Response that they filed with this court that BOFI found Regional's "conduct to be compliant," the April 12, 2017 BOFI letter stated in paragraph 1 that the BOFI investigator "…reviewed the consumer's application, and audited the promissory note, payment history and collection notes.  The loan file was in compliance with Title 37 of the South Carolina Consumer Protection Code."[4]

---

[3] See S.C. Code § 37-5-108(6) for an explanation of the Department's procedures when processing a complaint letter.  After the Department's 30 day complaint review period, a consumer may file an action against a business for any alleged violation of § 37-5-108, which is what happened in this case.
[4] For more context on what it means for BOFI to audit a supervised loan file for compliance with Title 37,

35. Note also that the BOFI investigator in the April 12, 2017 BOFI letter stated that the reason that BOFI was "closing this complaint" was because "…Hutto has retained an attorney…." The BOFI letter then references S.C. Code § 37-5-108(6), which sets forth the procedures when a consumer files a complaint with the Department.

36. In its attached Response [Prior Suit ECF 55], at page 4, Defendants state that "[Hutto] failed on all but one of her claims and was awarded a nominal $1,000 award." Defendants fail to note that an award to a consumer of a statutory penalty, when finding that a creditor has engaged in unconscionable debt collection conduct under S.C. Code § 37-5-108(2), has an award range of $100-$1,000, and Hutto was awarded the maximum statutory penalty under the law.

37. Defendant's Response, on page 5 at footnote 5, notes that Hutto's counsel requested $179,550 in attorney fees and costs but fails to note that the referenced fee application also claimed 466.10 hours of attorney time based on the detailed contemporaneous time records submitted for work that was done over 8 years in this case in various forums. The arbitrator's attorney fee award (minus costs), therefore was $25,283.24 for 466.10 hours of work for an effective hourly rate of $54.24 an hour for an attorney with over 37 years of experience in South Carolina consumer law.[5] See attached Interim Award and Final Award.

38. On page 5 of Defendants' Response, they claim that "consistent with the arbitration award entered on May 6, 2025, Regional sent Petitioner's counsel a check on June 6, 2025 for the net award in this case: $11,433.67. (Letter, Ex. 1)." Defendants also

---

see S.C. Code § 37-3-505 to -506.
[5] By comparison, the arbitrator's fee award to himself for work done from his appointment on September 25, 2023 to the fee award on May 6, 2025 was $24,718.94.

claimed that the check that they sent "… fully satisfied the arbitration award..." [Prior Suit ECF 55-1].

39.     Also on page 5 of Defendants' Response, they acknowledged that Hutto's counsel had advised them by email that their conduct in collecting the Regional debt was "false, misleading or deceptive." (See attached emails also filed in Prior Suit as ECF 55-3).

40.     On pages 5-6 of Defendants' Response, they alleged that the holding in the cited *Jackson v. Speed* case applied to this case to mean that their settlement check was sent in good faith since that case held that "an attorney's fee award belongs to the client, not the attorney." (See attached emails also filed in Prior Suit as ECF 55-3).

41.     Reference to the facts of *Jackson v. Speed*, 326 S.C. 289, 307, 486 S.E.2d 750, 759 (1997) shows that this case was interpreting the South Carolina Dealer's Act, S.C. Code § 56-15-110.[6]

42.     The attorney fee provision relied upon by the arbitrator in his attached Interim Award was S.C. Code § 37-5-202(8).[7] (See attached Interim Award at ¶ I, also filed in Prior Suit as ECF 55-2).

43.     Defendants note on page 6 of their Response, at footnote 6, that Hutto's counsel relied upon *Jackson v. Speed* in his attorney fee request filed in the arbitration action, but fails to note that it was only relied upon to establish the six attorney fee factors that apply to an attorney fee award under South Carolina law.  (See attached email dated March 3, 2025 from Hutto's counsel to Defendants, also filed in the Prior Suit as ECF 55-4.)  For

[6] "(1) In addition to temporary or permanent injunctive relief as provided in Section 56-15-40(3)(c), any person who shall be injured in his business or property by reason of anything forbidden in this chapter may sue therefor in the court of common pleas and shall recover double the actual damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

[7] "(8) In an action in which it is found that a creditor has violated this title, the court shall award to the consumer the costs of the action and to his attorneys their reasonable fees. In determining attorney's fees, the amount of the recovery on behalf of the consumer is not controlling."

9

the attorney fee statute that applied in the arbitration action, Hutto relied upon the South Carolina Code section cited by the arbitrator, not the section cited in *Jackson v. Speed*, since Hutto's claim against Regional was not based on the South Carolina Dealer's Act.

44.     On page 7 of Defendants' Response, they state "[Hutto's] contention that the arbitrator found in her favor borders on pure fantasy." (For award to Hutto, see attached Interim Award ¶¶ A, H, and J, also Final Award ¶ 4 and unnumbered paragraphs at bottom of Final Award.) [Also filed as ECF 55-2 in Prior Suit.]

45.     Also on page 7 of Defendants' Response, they claim Hutto's "… refusal to accept Regional's payment to fully satisfy the arbitration award is contrary to the law that permits an offset of mutual awards…." [Also filed as ECF 55 in Prior Suit.]

46.     Defendants' claim on pages 7-8 of their Response that Hutto's case involved an "insignificant violation" that "provide[d] a windfall to a debtor's attorney."

47.     Defendants' claim in their Response at page 8, footnote 8 that Regional's attempted net payment check "offsets the mutual awards."  On this page they also claim again that *Jackson v. Speed* applies in this case to prove that "an attorney's fee award belongs to the client, not the attorney."

48.     Defendants' Response also cites *Lawson v. Sumter Cnty. Sheriff's Off.*, 339 S.C. 133, 137 n.1, 528 S.E.2d 86, 88 n.1 (Ct. App. 2000) in support of its claim that attorney fees "are payable to the prevailing party (the client), and not the attorney."  However, this case, unlike Hutto's case, was brought under 42 U.S.C. § 1983.  The attorney fee section of that law is found in § 1988(b).[8]

---

[8] As cited by the court, "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs....42 U.S.C. § 1988(b)."

49.    On page 9 of their Response, Defendants state "Regional simply effectuated the arbitrator's own accounting by tendering a single net payment representing the balance owed after all mutual obligations were offset."

50.    On page 10 of their Response, Defendants claim " [f]urther, doing so would permit Petitioner's counsel to throw his client under the bus by effectively requiring Regional to pay the gross amount of the attorney's fee award to counsel—despite the law holding that an attorney's fee award belongs to the party and not the lawyer—while separately requiring Regional to pursue supplemental proceedings to collect its judgment against Petitioner." Also, "[s]uch an outcome would be inherently unjust, has no basis in the law or in the language of the arbitration award, and the arbitrator plainly did not intend such an unjust scenario when issuing his award." Further, "Regional's tender of a single check that satisfies the arbitration award in full (after an appropriate offset) is consistent with the arbitration award and case law."

51.    On page 10 of their Response, Defendants also claim that "Regional has fully satisfied the arbitration award." They also claim that the "arbitration award … was satisfied months earlier."

52.    On that same page, Defendants claim that Regional's attempted payment was "intentionally neglected in an effort to further line [Hutto's] counsel's pocket. Defendants also claim that Hutto is not entitled to any post-judgment interest.

53.    In the Conclusion paragraph of Defendants' Response, they claim that "Regional's payment of $11,433.67, which represents the net award in compliance with the arbitration award … is consistent with case law."

## VIOLATION OF THE FDCPA
(As to all Defendants)

54.     That the allegations as contained in the foregoing paragraphs are realleged and incorporated by reference as if set forth fully herein.

55.     That Hutto is a "consumer" within the meaning of 15 U.S.C. § 1692a(3) in that she is a natural person allegedly obligated to pay a debt.

56.     That the consumer loan at issue in this case is a "debt" as defined at 15 U.S.C. Sec. 1692a(5).

57.     That Wyche is a "debt collector" as defined in 15 U.S.C. § 1692a(6).

58.     That Casey is a "debt collector" as defined in 15 U.S.C. § 1692a(6).

59.     That Critzer is a "debt collector" as defined in 15 U.S.C. § 1692a(6).

60.     That Bazzle is a "debt collector" as defined in 15 U.S.C. § 1692a(6).

61.     All Defendants regularly collect consumer debt on behalf of creditors in South Carolina as part of their normal business operations in this state.

62.     That Defendants violated the Fair Debt Collections Practices Act (FDCPA) by making "false, deceptive or misleading misrepresentation[s] or means in connection with the collection of any debt" which violates 15 U.S.C. § 1692e and in particular subsections (2)(A&B), (5), (10), and (11).

63.     That Defendants violated the FDCPA by using "unfair or unconscionable means to collect or attempt to collect any debt" which violates 15 U.S.C. § 1692f and in particular subsections (1), and (6).

64.     That, in general, Defendants violated the FDCPA provisions indicated above by making the statements listed above by them (and in the attached exhibits) in the section of this Complaint titled "Factual Allegations."

12

65.     That, specifically, Defendants violated the FDCPA provisions indicated above by making the statements or taking the actions listed above (and in the attached exhibits) in the following paragraphs of this Complaint: 15, 18-21, 25-29, 32-40, and 43-53.

66.     That Defendants violated 15 U.S.C. § 1692e(11) by not including the required debt collector language on the attached June 6, 2025 cover letter from Defendants to Hutto through her counsel.

67.     That, upon information and belief, Defendants violated the FDCPA in other such manners and through utilizing such methods as may be shown through discovery and proved at any hearing or trial.

68.     That as a direct and proximate cause of the actions of Defendants, Hutto has incurred or will incur vehicle mileage expenses, lost time or wages, and legal fees and costs which are necessary to recover her damages in this case and has incurred or will incur such damages as may be shown through discovery and proved at any hearing or trial.

69.     That Hutto is entitled to recover her actual damages as may be proved at any hearing or trial in this case and $1,000.00 in statutory damages from each Defendant plus her attorney's fees and the costs incurred in pursuing this action as authorized pursuant to 15 U.S.C. § 1692k(a).

<u>**ARGUMENTS**</u>

Defendants' allegations and actions in deducting the award against Hutto from the award to Hutto's counsel, and their improper claim that these actions and allegations were proper are based on an improper understanding of applicable law.

13

The primary mistake of law is that Defendants claim that under the SCCPC provisions applicable in this case that an award of attorney fees is made to the client, not to the client's counsel, so is therefore property of the client and subject to setoff for a debt owed by the client to a creditor. However, this is incorrect. Note first that the cases cited by Defendants for this argument do not apply to the attorney fee shifting statute at issue in the arbitration action and the Prior Suit. As found by the arbitrator in ¶ I of the attached Interim Award, the arbitrator relied upon S.C. Code § 37-5-202(8) in granting attorney fees. That subsection reads in pertinent part as follows: "In an action in which it is found that a creditor has violated this title, the court shall award to the consumer the costs of the action and to his attorneys their reasonable fees." It is clear from the language of this statute that the attorney fee award is made to the consumer's attorney, not to the consumer directly. However, the cases cited by Defendants in the Prior Suit to support their claim that attorney fees belong to the client were based upon different statutes. As noted above, *Jackson v. Speed*, which is the primary case relied upon by Defendants for this claim, was based on the language of the South Carolina Dealers Act, which states in pertinent part "any person who shall be injured … may sue therefor in the court of common pleas and shall recover double the actual damages by him sustained, and the cost of suit, including a reasonable attorney's fee." S.C. Code § 56-15-110 excerpts. This statute clearly states that the client, not the attorney, is granted the recovery of the attorney fee, unlike the language in § 37-5-202(8). Defendants also improperly cite the *Lawson v. Sumter Cnty. Sheriff's Off.* case cited above, which was brought under 42 U.S.C. § 1983. The attorney fee section of that statute states in pertinent part as

14

follows: "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs....42 U.S.C. § 1988(b)." Again, Defendants have cited a court holding that does not apply to the facts of this case, since the § 1988 statute also awards the "reasonable attorney's fee" to the client, not the attorney, which is unlike the law that applied in the Prior Suit and as found to apply by the arbitrator in the arbitration action.  Therefore, Defendants statements and actions in claiming that in this case the attorney fee belongs to the client, not the attorney, violated the FDCPA provisions cited above, namely § 1692(e,f) and their cited subsections.  Since under applicable law the attorney fee in this matter clearly belongs to the attorney, this means that there is also no mutual debt to setoff between Regional and Hutto, since it would be frivolous for Defendants to claim that the arbitrator found that Hutto's counsel owed any debt to Regional.  This means that all of the cases cited by Defendants in the Prior Suit for the proposition that it is proper to setoff mutual debts are inapplicable, so the citation to those cases is further proof of statements that violate the applicable subsections of § 1692e cited above.  This also means that Defendants allegation in the attached June 6, 2025 FedEx letter that the "check represents full satisfaction of the arbitrator's Final Award dated May 6, 2025" was false, misleading or deceptive and violates § 1692e(2) & (10) and that Defendants actions in assisting Regional in attempting to improperly setoff the non-mutual debts violated § 1692f(1) & (6).

Also, Hutto is not convinced that even if Defendants were correct that an award of attorney fees belonged to the client and not to the client's attorney that it would not be necessary to look further into that holding to determine who the real

owner of those attorney fees might be.  Hutto believes that, at best, a client could only hold legal title to those attorney fees, and that the attorney would actually hold all of the equitable title to those fees, since they were awarded to the client for the benefit of the attorney.  Hutto therefore alleges that a client with legal title to those attorney fees could be legally compelled by the attorney, as the real owner of those fees, to turn them over to the attorney.  The client therefore would only hold title to those attorney fees in a resulting trust for the benefit of the attorney, which Hutto believes should protect those fees from being offset for a client's debts, which were not the attorney's debts, since mutuality would be lacking as to the true owner of those fees.  Any other result, especially in a case like this one, would frustrate the clear policy of this state, as was expressed in S.C. Code § 37-1-102(1), (2)(d).  If a consumer's attorney were required to pay off his client's debts in order to be able to represent that client in a consumer protection action, for which he would normally get no attorney fee up front due to the fee shifting statute, then very few, if any, non-legal aid attorneys would take such cases.  Hutto believes that this is the real goal of Defendants in making this argument, since Defendants are in the business of defending consumer protection claims and preventing consumers from having equal representation when their rights are violated would make Defendants' jobs much easier,  since Defendants would then only have to litigate against mostly unsophisticated consumers without legal representation.  Hutto believes that such a result would also be contrary to the policies and purposes of the FDCPA, as expressed in 15 U.S.C. § 1692(a-e).

16

Even if Defendants had been correct that under applicable South Carolina law under the facts of this case that the attorney fee belonged to the client, not the attorney, that legal conclusion would be contrary to the holding of the arbitrator in the arbitration action. As can be seen by reference to the attached Interim Award, at ¶¶ H & I, and the Final Award at ¶ 4 and in the unnumbered paragraphs, the arbitrator clearly distinguished between the award to Regional, from which he offset the $1,000 award to Hutto, and the separate award to Hutto's counsel, from which he deducted no debt to Regional. Therefore, even if this court found that the arbitrator incorrectly, as a matter of law, failed to offset the award to Hutto's counsel against the award to Regional, as Defendants have alleged should occur (and they also allege actually was done by the arbitrator), the court must still find that the arbitrator applied the law as argued by Hutto, even if he were found to be in error about that law. Hutto alleges that this court must respect the arbitrator's conclusions of law, even if this court were to disagree with them, since the matter was properly submitted to the arbitrator, and he decided it, and neither Regional nor Defendants challenged that ruling in a timely motion to vacate or modify his decision.

Defendants' arguments in the Prior Suit, as noted above in the Factual Allegations section, that any violation of Hutto's rights was "insignificant" [Defendants' Response, pp. 7-8) or that "Regional never intended to harass, embarrass, or annoy [Hutto](Def. Response, p. 2) are contradicted by the findings of the arbitrator. He found that Regional violated S.C. Code § 37-5-108(5)(b)(ii), which (as cited above in the Factual Allegations) specifically states in -108(5)(b) that it is prohibiting the creditor from communicating with a consumer under "other

17

circumstances so that it is a reasonable inference that the primary purpose of the communication was to harass the consumer."  It then goes on in -108(5)(b)(ii) to list "communicat[ing] with a consumer who is represented by an attorney when such fact is known to the creditor…" as a violation of that anti-harassment prohibition. The arbitrator then specifically finds in ¶ 4 of the attached Interim Award that Regional communicated with Hutto when they knew that she was represented by an attorney and in ¶ A of that same Interim Award that Regional violated this subsection of the SCCPC.  The arbitrator therefore found that the primary purpose of Regional's improper communication with Hutto was to harass her, which makes Defendants statements in this portion of their Response to be a violation of the FDCPA provisions cited above as well.

Regarding the investigation by the Department and BOFI into Regional's collection conduct in the Prior Suit, Defendants claimed on page 2 of their Response that the Department investigated Hutto's complaint, then found Regional's <u>conduct</u> (emphasis added) to be compliant, and then dismissed the matter.  However, this claim violates § 1692e, e(10) since reference to the BOFI letter in Regional's attached R15 exhibit shows BOFI only found, after audit of Hutto's loan file, that the <u>loan file</u> was in compliance with Title 37.  There is no finding in that letter that Regional's conduct was compliant with Title 37.  Instead, from reading that letter, it is clear that the BOFI investigator had to warn Regional's manager that his branch's actions in communicating with Hutto (after he reviewed the Regional collection notes showing those improper communications) could be considered to be harassment under the law, which ironically is exactly what the arbitrator found in

18

his Interim Award.  Defendants also state in this section of their Response that Hutto's complaint to the Department was "dismissed" but this is incorrect as reference to both the BOFI letter and the Department letter closing the complaint shows, since the complaint was only marked as "resolved" and "closed," not dismissed, as is part of the Department's normal processing of such complaints pursuant to their duties under the law.  See § 37-5-108(6) for that process.  Both BOFI and the Department only closed the complaint in their system since Hutto had obtained an attorney, and it was then that attorney's responsibility to pursue any statutory violations, not the responsibility of the Department, which could otherwise have chosen to bring an action against Regional itself, since the Department regulates and enforces this state law. [9] Defendants' representations on this issue violated FDCPA § 1692e, e(10) since they misrepresented these facts while attempting to collect the Hutto debt for Regional in the Prior Suit.

Defendants also violated FDCPA § 1692e(11) by failing the include the mini-Miranda disclosure about debt collection and being debt collectors in the June 6, 2025 FedEx letter.  Since Defendants are debt collectors under the law, and not original creditors like Regional, no exception to that statute applies to them.

Defendants' claims in its Response filed in the Prior Suit that Hutto is not entitled to post-judgment interest under federal law for any award that this court might confirm in her favor violates FDCPA § 1692e, e(2), e(10) since Hutto claims

---

[9] See S.C. Code § 37-6-101 *et seq.*

19

that an award of post-judgment interest on any monetary award that this court might issue is required by federal law.[10]

To the extent that Hutto has not pointed out specifically to this court any other alleged violations of the FDCPA provisions indicated above, which may exist in the attached exhibits regarding admissions by Defendants or findings by this court or the arbitrator, or such findings as this court may issue after the date of this Complaint, Hutto respectfully requests that this court find such other violations of the statutes indicated above as well.

WHEREFORE, the Plaintiff, Deborah Hutto, respectfully prays for the following relief:

a) A finding by the court that Defendants have violated the specific FDCPA sections and subsections alleged above,

b) For a judgment against Defendants in Hutto's favor in the amount of $1,000.00 from each of the Defendants for statutory damages pursuant to 15 U.S.C. § 1692k(a),

c) For a judgment against Defendants in Hutto's favor for such actual damages as Hutto may be able to prove at any hearing or trial,

d) For a judgment against Defendants in Hutto's favor pursuant to 15 U.S.C. § 1692k(a)(3) for such reasonable attorney's fees and costs as the court may find to be appropriate,

e) For such other and further relief as the court shall deem appropriate.

Dated this June 6, 2026.

Respectfully Submitted,

/s/ John R. Cantrell, Jr.

---

[10] See 28 U.S.C. § 1961.

20

Attorney for Plaintiff
Dist. Ct ID # 4951
Cantrell Legal PC, 108 Phillips Ct.
St. Matthews, SC 29135-8582
843-797-2454 (office)
johncantrelljr@gmail.com